UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD R. KIMMEL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE<br><br>Defendant. | Civil Action 04-1551 (HHK) |

**MEMORANDUM OPINION & ORDER**

Edward R. Kimmel, Manning M. Kimmel IV, and Captain Vincent J. Colan bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States Department of Defense ("DoD"). Presently before this court are plaintiffs' motion for summary judgment (Dkt. #7) and DoD's cross-motion for summary judgment (Dkt. #17). Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that plaintiffs' motion for summary judgment must be denied and DoD's cross-motion for summary judgment must be granted.

**I. BACKGROUND**

Plaintiffs in this action seek the release of documents related to the posthumous advancement of Rear Admiral Husband E. Kimmel, United States Navy, to the grade of Admiral on the retired list of the Navy.[1] Compl. ¶ 4. Rear Admiral Kimmel was the "Commander in Chief of the United States Fleet and the Commander in Chief, United States Pacific Fleet," at the

---

[1] Edward R. Kimmel is the son of the late Admiral Kimmel, and Manning M. Kimmel IV is Admiral Kimmel's grandson. Compl. ¶ 3. Captain Vincent J. Colan is a retired officer of the United States Naval Reserve who served under Admiral Kimmel.

time of the December 7, 1941 attack on Pearl Harbor, Hawaii.  Compl., Ex. A.  Following the attacks, Admiral Kimmel was relieved of his command and returned to his permanent grade of Rear Admiral.  *Id.*

On October 20, 2000, Congress requested that the late Rear Admiral Kimmel be advanced to the grade of Admiral.[2]  Edward Kimmel, Rear Admiral Kimmel's son, was informed by letter dated July 19, 2002, that in light of Congress's request DoD would examine the appropriateness of Rear Admiral Kimmel's advancement.  On September 20, 2002, the White House denied Congress's request on the President's behalf and stated that there was "no new evidence to consider overturning decisions made more than 50 years ago."  *Id.* ¶ 9.

Shortly before this decision, Captain Colan submitted a FOIA request to DoD seeking a variety of materials related to DoD's evaluation of Rear Admiral Kimmel's posthumous advancement.[3]  On January 3, 2003, DoD responded to Captain Colan's request by disclosing a

---

[2] Congress included the request in Section 546 of Public Law 106-398, section 546(b) of the National Defense Authorization Act for fiscal year 2001.  Compl. ¶ 4.

[3] Specifically, Captain Colan requested:

1. A copy of each "do"-"don't" or similar recommendation described to me by Lieutenant Colonel Hall as having been submitted by the Director, Officer and Enlisted Personnel Management (Military Personnel Policy) or by a member of his staff together with the rationale behind each to Under Secretary of Defense for Personnel and Readiness Dr. David Chu.
2. A copy of any recommendation on this matter together with the rationale behind it submitted by Under Secretary of Defense for Personnel and Readiness Dr. David Chu or a member of his staff to Deputy Secretary of Defense Paul Wolfowitz.
3. A copy of the recommendation in this matter together with the rationale behind it submitted by Under Secretary of Defense Paul Wolfowitz or a member of his staff to Secretary of Defense Donald Rumsfeld.
4. A copy of any recommendation in this matter together with the rationale behind it submitted by Secretary of Defense Donald Rumsfeld or a member of his staff to any member of the White House staff or to the President.

2

ninety-four page report issued by Under Secretary of Defense Edwin Dorn, dated December 15, 1995. In addition, DoD indicated that there were an additional sixty-six pages of responsive documents that were being withheld pursuant to 5 U.S.C. § 552(b)(5). Unsatisfied with DoD's response, Captain Colan submitted a letter on February 26, 2003 that sought the withheld items—DoD elected to treat this letter as an appeal of its earlier determination. Prior to the filing of the complaint in this action, Captain Colan engaged in a number of communications with DoD in an effort to expedite the processing of this appeal, the last of which took place on March 2, 2004. Plaintiffs filed their complaint on September 8, 2004, and at that time had not received any official response regarding their appeal.

Following the filing of the complaint, DoD determined that fifty-six of the sixty-six pages originally withheld could be produced, Def.'s Mot. for Summ. J., Ex. 1 (C.Y. Talbott Decl. ¶ 8), some with redactions. The last of these documents were delivered to Captain Colan on April 20, 2005. In addition, DoD also produced a *Vaughn* index that described the basis for withholding the non-produced documents.[4]

---

    5. A copy of any communication from any member of the Department of Defense to the White House Chief of Staff Andrew Card that prompted him to issue his letter of June 5, 2002 to Congressman Michael Castle. A similar letter was sent to Senators Biden and Carper.
    6. In a July 10, 2002 letter to me and others[ . . .], Under Secretary of Defense for Personnel and Readiness Dr. David Chu wrote " . . . after again reviewing this entire matter, the Department of Defense must reaffirm its prior conclusion . . ." I respectfully request identification of the names and ranks of those who reviewed this matter, including a description of the material they reviewed.

Def.'s Mot. for Summ. J., Ex. 1.

    [4] In plaintiffs' motion for summary judgment, plaintiffs challenged DoD's failure to produce a *Vaughn* index at the time of its initial decision to withhold documents from production. However, as DoD correctly asserts, there is no obligation to produce a *Vaughn* index during the administrative process. *See, e.g., Schwarz v. U.S. Dep't of Treasury*, 131 F. Supp 2d

Both parties now move for summary judgment.[5]

## II. ANALYSIS

Congress enacted FOIA to afford greater public access to government records. *FBI v. Abramson*, 456 U.S. 615, 621 (1982). In so doing, however, Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information." *Id.* In order to balance these competing interests, Congress set forth nine exemptions to FOIA pursuant to which an agency may properly withhold information. *See* 5 U.S.C. § 552(a)(4)(B) & (b)(1)–(9). In resisting plaintiffs' request for production, DoD invokes Exemptions 5 and 6. *See* 5 U.S.C. § 552(b)(5), (6).

**1. Exemption 5**

Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums [sic] or letters which would not be available by law to a party other than an agency in litigation

---

142, 147 (D.D.C. 2000). Regardless, because DoD produced a *Vaughn* index as part of its opposition to plaintiffs' motion for summary judgment, this portion of the motion shall be considered moot.

[5] Under FED. R. CIV. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50.

with the agency." 5 U.S.C. § 552(b)(5). This provision applies to all documents that are normally privileged from discovery. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975). While Exemption 5 should be construed as narrowly as possible, *see Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980), the attorney-client privilege and the deliberative process privilege—both raised by DoD—fall squarely within this exemption. *See Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 584–85 (D.C. Cir. 1987); *In re Lindsey*, 148 F.3d 1100, 1104 (D.C. Cir. 1998).

Exemption 5 protects from disclosure any documents that reveal an agency's deliberative process in reaching policy decisions. *Sears*, 421 U.S. at 150. The rationale behind the privilege is that advice and information would not flow freely within an agency if such consultative information were open to public scrutiny. *Mead Data Cent. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977). The privilege serves to assure agency employees that they can provide a decision maker with their uninhibited opinion without fear of public scrutiny, to prevent premature disclosure of proposed policies, and to protect against public confusion through the disclosure of documents suggesting reasons for policy decisions that were ultimately not taken. *See Am. Petroleum Inst. v. EPA*, 846 F. Supp. 83, 88 (D.D.C. 1994).

Documents reveal an agency's deliberative process if they are predecisional—*i.e.* the records were generated prior to the adoption of agency policy[6]—and deliberative—*i.e.* they reflect the "give-and-take of the consultative process." *Senate of Puerto Rico*, 823 F.2d at 585.

---

[6] In order to show that a document is predecisional, an agency is not obligated to demonstrate a specific final decision to which the document contributed, but must only establish what deliberative process is involved and the role played by the documents in the course of that process. *See Sears*, 421 U.S. at 151 n.18.

Deliberative documents are those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150. Documents protected by the privilege are those that would prematurely reveal the personal opinions of the author or the views of the agency on a decision that is not-yet made. *Coastal States*, 617 F.2d at 866.

Plaintiffs' principal argument against the applicability of Exemption 5 is that the documents at issue cannot be categorized as "predecisional" because they were generated after the relevant "decision"—Congress's October 2000 decision to request Rear Admiral Kimmel's advancement. Plaintiff's argument cannot be sustained.

While DoD need not identify any specific "decision" to trigger the proper application of Exemption 5, *see, e.g., Sears*, 421 U.S. at 151 n.18, plaintiffs, in any event, have misperceived the decision that is pertinent to a determination of whether the documents they seek are "predecisional." The materials plaintiffs seek relate to DoD's recommendations concerning whether or not the President should acquiesce to Congress's request. Rather than Congress's action in October 2000, it is the President's decision to reject Rear Admiral Kimmel's advancement, announced in September 2002, that is the proper focus for the court's inquiry. All of the documents at issue were created prior to this date, and are therefore "predecisional."

**2. Exemption 6**

In addition to Exemption 5, DoD also invokes Exemption 6. In reliance on Exemption 6, DoD has redacted from the produced documents the names of civilian personnel below the level of office-director and military personnel below the rank of Colonel (Captain in the Navy).

Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The phrase "similar files" includes all information that applies to a particular individual. *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999); *see also U.S. Dep't of State v. Washington Post*, 456 U.S. 595, 602 (1982) (stating that "'[t]he exemption [was] intended to cover detailed government records on an individual which can be identified as applying to that individual'") (quoting H.R. REP. NO.89-1497, at 11 (1966)).

The Supreme Court has instructed that the scope of Exemption 6 be interpreted broadly, *Washington Post*, 456 U.S. at 599–603, and accordingly, the court has little difficulty concluding that the name of an individual employed by DoD is the type of information that the exemption seeks to protect, *see Horowitz v. Peace Corps.*, 428 F.3d 271, 279–80 (D.C. Cir. 2005) (finding Exemption 6 permitted defendant to withhold release of a student's name); *Strout v. U.S. Parole Comm'n*, 40 F.3d 136, 139 (6th Cir 1994) (protecting names and addresses of persons opposing parole of individual).

Having answered the threshold question of whether or not the names of DoD personnel are subject to Exemption 6, the court must still balance the privacy interest in non-disclosure against the public interest in release of information to determine if "the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46 (internal quotation marks and citation omitted). Here, the scales tip decidedly in DoD's favor. DoD's policy of protecting names below the office-director level was adopted in the wake of the September 11, 2001 terrorist attacks on the Pentagon and the World Trade Center. *See* Def.'s Mot. for Summ. J., Ex. 2 (Memorandum re: Withholding of Information that Personally Identifies DoD

Personnel). DoD acted out of concern that employees of DoD could become targets of terrorist assaults, and the court has no reason to question this determination. Moreover, the court does not believe that releasing these individuals' names would shed any light on the subject of the FOIA request—the process that led to the White House's rejection of Congress's request to advance Rear Admiral Kimmel.

**3. Adequacy of DoD's *Vaughn* Index**

Plaintiffs also argue that DoD's *Vaughn* index inadequately describes the basis for DoD's refusal to produce certain documents. In order for its *Vaughn* index to pass muster, DoD must provide a "sufficiently detailed" analysis in support of any claimed exemptions. *Vaughn v. Rosen*, 484 F.2d at 820, 827 (D.C. Cir.1973). This analysis must be thorough enough to permit the court to assess the legitimacy of the decision to withhold information without having to physically examine each of the documents on which withheld information is contained. *Id.* at 823; *Coastal States*, 617 F.2d at 861. To meet this burden, a *Vaughn* index (1) "should be contained in one document . . ."; (2) "must adequately describe each withheld document or deletion from a released document," and (3) "must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

Upon examination of DoD's *Vaughn* index, the court finds that DoD has demonstrated that Exemption 5 and 6 justify the refusal to produce some documents, and to redact portions of other materials.[7] DoD's *Vaughn* index sets forth the author, addressee, type of document, subject

---

[7] In each instance where DoD determined that a document must be withheld in its entirety, it made a separate notation that the document contains no segregable information. The court accepts this assertion and cannot identify any basis to doubt its validity.

of each document, date of each document, and a "comment" that explains the applicability of the asserted FOIA exception to the individual document. This information is sufficient for the court to make its determination.

With respect to the deliberative process privilege, given that each of the documents at issue was produced during the period between Congress's request for advancement and the President's ultimate decision, that the materials are communications between high-level members of DoD or the White House, and that the subject of nearly ever document references the potential advancement of Rear Admiral Kimmel, the court believes that it is able to fairly determine DoD did not act improperly in withholding documents from production, and redacting portions of other produced materials.

As for DoD's assertion of the attorney-client privilege, the court finds that the *Vaughn* index also sufficiently details the basis for the assertion of this privilege. Each entry on the *Vaughn* index that includes an assertion of the attorney-client privilege, with one exception,[8] indicates that the document was prepared by DoD's office of the general counsel and that the document communicates opinions and recommendations concerning Rear Admiral Kimmel's advancement.

As such, the court finds that DoD has demonstrated that it properly invoked Exemptions 5 and 6, and is therefore entitled to summary judgment.

---

[8] Item #9 invokes the attorney-client privilege, however, there is no indication that an attorney contributed to the drafting of the memo. The author is listed as the "Assistant Secretary of Defense," but DoD does not assert that this individual is an attorney. Despite this shortcoming, because the court finds that Item #9 was properly withheld pursuant to the deliberative process privilege, the court's inability to determine the propriety of the attorney-client privilege is of no consequence.

## III. CONCLUSION

For the aforementioned reasons, it is this 31st day of March, 2006, hereby

**ORDERED** that plaintiffs' "Motion for Summary Judgment" (Dkt. #7) is **DENIED**, and its further

**ORDERED** that DoD's "Cross-Motion for Summary Judgment" (Dkt. #17) is **GRANTED**.

Henry H. Kennedy, Jr.<br>
United States District Judge